```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
VICTORIA BRIGHTMAN,

                    Plaintiff,                              **MEMORANDUM and ORDER**

        — against —                                          05 CV 3820 (SLT)(VVP)

PRISON HEALTH SERVICE, INC.,
PRISON HEALTH MEDICAL SERVICE, P.C.,
NEW YORK CITY DEPARTMENT OF HEALTH
AND MENTAL HYGIENE, THE CITY OF NEW
YORK, DON DOHERTY, TREVOR PARKS,
BECKY PINNEY, JACK RAFFERTY, and PAUL
ROBINSON, individually and in their official
capacities,

                    Defendants.
----------------------------------------------------------------X
```

**TOWNES, United States District Judge:**

Plaintiff Victoria Brightman ("Plaintiff" or "Brightman") brings this action against defendants Prison Health Service ("PHS"), Prison Health Medical Service, P.C. ("PHMS"), New York City Department of Health and Mental Hygiene ("DOHMH"), The City of New York ("City") and Don Doherty, Trevor Parks, M.D., Becky Pinney, Jack Rafferty and Paul Robinson, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, and the New York State Human Rights Law and New York City Administrative Code.[1]

Plaintiff filed an Amended Complaint on April 11, 2006, after recognizing that the City of New York was not her legal employer, and withdrew her federal claims and state law claims pursuant to Executive Law §296(1) and New York City Administrative Code §8-107(1) against

---

[1] In a letter to the Court dated February 13, 2006, Plaintiff withdrew her claims under 42 U.S.C. § 1983, and in her opposition to the motion to dismiss, Plaintiff withdrew her claims under the Family and Medical Leave Act. Therefore, those claims will no longer be considered.

the City of New York and DOHMH ("City Defendants"), but added claims pursuant to New York State Executive Law §296(6) and New York City Administrative Code §8-107(6), alleging that City Defendants aided and abetted the alleged unlawful discrimination. These are the only two claims asserted against City Defendants. Plaintiff also makes these same claims against individual defendants Doherty, Parks, Pinney, Rafferty and Robinson (she does not assert Title VII claims against the individual defendants).

Defendants PHS, PHMS, Doherty, Parks, Pinney, Rafferty and Robinson (the "Prison Defendants") and the City Defendants now move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendants' motions are granted.

## BACKGROUND

The following facts are drawn from Plaintiff's Amended Complaint ("Compl.") and are deemed to be true for the purpose of this motion to dismiss.

Plaintiff, an African-American female, is employed as a physician's assistant in the correctional health care system. (Compl. ¶ 15.) Health care is provided to inmates housed in the various correctional facilities in New York City by private contractors hired by the City, and DOHMH, which is a subsidiary of the New York City Department of Health, oversees the private contractors. (Compl. ¶ 16.) At three year intervals, the existing contract with the City lapses and the City accepts bids from various vendors and awards the new contract to a new vendor. (*Id.*) From January 1, 1998 to December 31, 2000, Plaintiff was employed by St. Barnabas Hospital, the City's selected vendor for that contract. (Compl. ¶ 17.) Plaintiff's contract with PHMS began on January 1, 2001. (*Id.*)

On October 9, 2000, while still employed by St. Barnabas, Plaintiff filed a complaint with the chief acting physician, alleging that she was being sexually harassed by Paul Robinson, her supervisor. (Compl. ¶ 20.) When PHMS took over the contract from St. Barnabas, Robinson was transferred by PHMS to the Riker's Island facility, while Plaintiff continued working in Manhattan. (Compl. ¶ 21.) Plaintiff alleges that, because she filed this complaint of harassment, she was labeled a "troublemaker" and subsequently retaliated against by upper management. (Compl. ¶ 22.)

In or about August 2001, Plaintiff commenced leave pursuant to the Family and Medical Leave Act. (Compl. ¶ 23.) Prior to the end of her leave, on or about August 24, 2001, Plaintiff was suspended by PHMS because her employment within the correctional facility violated rules set forth by the New York City Department of Corrections.[2] (*Id*.) Plaintiff remained on suspension for over eleven months before being reinstated via mediation on August 12, 2002. (*Id.*) After she returned to work, Plaintiff was transferred from the Manhattan facility to the Riker's Island facility and re-classified as a "float," which meant that she was not given a permanent work location, but was assigned to work within various buildings at Riker's Island as needed. (*Id.*)

According to Plaintiff, she was continually harassed by defendants after she returned from her suspension. Unlike similarly situated co-workers, she continually received requests to

---

[2] Although Plaintiff does not give any further details regarding her suspension in the Amended Complaint, Prison Defendants allege in their motion to dismiss that Ms. Brightman was suspended because she had a felony charge pending against her and was therefore not allowed to work in the prison system. The reason for Plaintiff's suspension is irrelevant to the Court's analysis, and therefore the Court does not take it into consideration, because Plaintiff's suspension occurred outside the statute of limitations and is time-barred under Title VII. Furthermore, on a motion to dismiss, the Court's analysis is limited to information contained within the four corners of the Complaint. *See Chambers v. Time Warner, Inc*., 282 F.3d 147, 154 (2d Cir. 2002).

3

provide updated medical credentials. (*Id.*) On or about June 19, 2003, defendant Doherty (Vice President of Operations) and defendant Rafferty (Director of Human Resources) ordered Plaintiff removed from the work schedule because she failed to provide them with updated credentials. (*Id.*) Plaintiff claims she was also denied overtime assignments after her return. (*Id.*) She complained of these actions to Robert Berding, a DOHMH Staff Person, on February 20, 2003, and to Ernest Marrero, the Executive Director of DOHMH, on June 25, 2003. (Compl. ¶ 25.) On or about February 26, 2004, Plaintiff spoke to Barbara Skinner, a Representative of the City Commission on Human Rights, to complain about this discriminatory treatment. (Compl. ¶ 26.)

On or about March 4, 2004, Plaintiff received a letter from Vanessa Jones, her Union Delegate, stating that Richard Plantamura, a Human Resources Representative, was requesting her Medical Health form because her employment folder was incomplete. (Compl. ¶ 27.) According to Plaintiff, Jones informed her that Plantamura indicated that he was under pressure to terminate Plaintiff. (*Id.*) She arranged for Jones to forward the appropriate forms to Plantamura on March 8, 2004. (Compl. ¶ 28.) On that same day, Defendant Rafferty issued a memo in which Plaintiff was cited for lacking four updated credentials. (*Id.*) Plaintiff continued to have trouble with credentialing requirements through May and June of that year. (Compl. ¶¶ 29 -33.)

In December 2004, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 34.) Plaintiff claims that following the filing of her complaint, the continuing practice of harassment intensified. For example, when she refused to conduct sick call duties for inmates in the radiology office, she was told to go home, but when similarly situated colleagues complained about the use of the radiology office for sick call

4

assignments, they were not ordered to go home. (Compl. ¶¶ 35, 36.) On another occasion, about seven months later, she was told to go home because she raised her voice when speaking with a coworker. (Compl. ¶ 47.)

Plaintiff had continued disciplinary and credentialing problems throughout 2005. (Compl. ¶¶ 39 - 46.) On June 15, 2005, Plaintiff received a call requesting that she provide a recent picture of herself because the picture in Plaintiff's credentialing folder had expired according to the Department of Health. (Compl. ¶ 46.) Plaintiff claims this as another example of Prison Defendants' attempts to harass and retaliate against her. (*Id.*)

Plaintiff filed the instant action on August 11, 2005, and filed an Amended Complaint on April 11, 2006.

## DISCUSSION

*A.*     *Legal Standard*

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept "as true the facts alleged in the complaint," *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 699 (2d Cir. 1994), and may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Thomas v. City of New York*, 143 F.3d 31, 36-37 (2d Cir. 1998) (citations omitted). The question for the Court "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996) (internal quotation marks and citations omitted). All reasonable inferences are to be drawn in the plaintiff's favor. *Shah v. Meeker*, 435 F.3d 244, 248 (2d Cir. 2006).

An employment discrimination complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). In order to survive a motion to dismiss, an employment discrimination plaintiff need not plead a prima facie case of discrimination, but must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz,* 534 U.S. at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). "However, as the Second Circuit has recently held, the holding in *Swierkiewicz* does not mean that '[p]laintiffs bear no burden at the pleading stage.'" *Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, No. 06-0672, 2007 WL 121431, at *4 (E.D.N.Y. Jan. 12, 2007) (quoting *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006)). Rather, "a plaintiff must allege, as the Supreme Court has held, those facts *necessary* to a finding of liability . . . [and] a plaintiff's allegations, accepted as true, must be sufficient, to establish liability." *Amron*, 464 F.3d at 343-344 (emphasis in original).

B.  *Statute of Limitations*

The Court first turns to the issue of whether Plaintiff's Title VII claims are time-barred. Prison Defendants argue that many of Plaintiff's claims are barred by the statute of limitations because a plaintiff may not assert Title VII claims based on events that occurred more than 300 days prior to the filing of an EEOC charge. *See* 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed her charge of discrimination with the EEOC on or about December 17, 2004; thus, the limitations period in her case began 300 days earlier, on February 20, 2004. This would mean that all of Plaintiff's Title VII claims that arose from events prior to February 20, 2004 are time-barred.

Plaintiff argues that the continuing violation doctrine should be applied to her Title VII claims. Prior to 2002, the continuing violation doctrine permitted recovery for discriminatory conduct that occurred outside of the applicable limitations period if the conduct was part of a "practice or policy" of discrimination. *See Nakis v. Potter*, 422 F. Supp. 2d 398, 409 (S.D.N.Y. 2006). However, the scope of the continuing violation doctrine was substantially restricted by the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). In that case, the Supreme Court held that "each discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113. The Court stressed that a discrete retaliatory or discriminatory act "occurred" on the day that it "happened" and therefore, a party "must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Id.* at 110. The Court went on to identify "termination, failure to promote, denial of transfer, or refusal to hire" as examples of conduct that constituted a discrete discriminatory act. *Id.* at 114.

The Court did, however, note that a hostile work environment claim was different, and would support the application of the continuing violation doctrine because such a claim "is composed of a series of separate acts that collectively constitute one unlawful employment practice." 536 U.S. at 117. Thus, where a plaintiff alleges a hostile-environment claim, conduct outside the applicable limitations period could be asserted so long as one act giving rise to the hostile-environment claim was within the limitations period. *Id.*

It is arguable whether any act giving rise to a hostile environment claim occurred within the limitations period. However, because all inferences are to be drawn in Plaintiff's favor on a 12(b)(6) motion, the Court will, for the purposes of analyzing Plaintiff's hostile environment

7

claim under Title VII, consider the entire time period of her claim, including conduct that occurred before February 20, 2004.

Although the Court will consider the entire time period for the purposes of Plaintiff's hostile work environment claim, Plaintiff is precluded under *National Railroad* from asserting in this action any pre-February 20, 2004 conduct by defendants as specific, compensable acts of retaliation under Title VII. Therefore, the Court cannot consider events such as Plaintiff's suspension, transfer or reclassification as a "float" for the purposes of a retaliation analysis. But, "time-barred conduct may still be offered as evidence of discriminatory intent to support timely claims." *Nakis*, 422 F. Supp. 2d at 410; *see also Nat'l R.R.*, 536 U.S. at 113 ("Nor does the statute bar an employee from using prior acts as background evidence to support a timely claim.").

### C. *Plaintiff's Hostile Work Environment Claim*

Under Title VII, an actionable hostile work environment means a workplace "permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions" of the victim's employment and create an abusive working environment. *Hayut v. State Univ. of New York*, 352 F.3d 733, 745 (2d Cir. 2003) (internal quotations and citations omitted). Hostile work environment claims must meet both an objective and a subjective standard. Not only must the victim herself "subjectively perceive [the] environment to be abusive" but the misconduct of which a plaintiff complains also must be "severe or pervasive enough to create an objectively hostile or abusive work environment." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 221 (2d Cir. 2004). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a

8

reasonable person would find hostile or abusive - is beyond Title VII's purview." *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

Plaintiff alleges she was subjected to a hostile work environment because she was repeatedly asked for credentials and a picture for her file. She also alleges that her work environment was hostile because she was not given overtime work after her suspension, and because, upon returning from suspension, she was transferred to another facility. In addition, she alleges she was once told to go home after refusing to work in the radiology lab, and seven months later, she was sent home once for using an improper tone of voice with a superior. However, these few incidents, occurring approximately over a four year period, are not severe or pervasive enough to provide a basis for relief. *See, e.g., Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (finding that offhand comments and isolated incidents will not amount to discriminatory changes in the terms and conditions of a plaintiff's employment that would sustain a hostile work environment claim) ; *Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002) (determining that five incidences with sexual overtones and seven incidences consisting of administrative and personnel decisions over a five year period was not sufficient to be severe or pervasive enough to sustain a hostile work environment claim); *see also Ashok v. Barnhart*, 289 F. Supp. 2d 305, 312 (E.D.N.Y. 2003) (noting "improper reprimands for alleged violations of firm policy are insufficient to establish a hostile work environment").

"Post-*Swierkiewicz*, district courts in this Circuit have dismissed hostile work environment claims at the pleadings stage where the alleged conduct was not severe or pervasive enough to warrant relief." *James v. Fed. Reserve Bank of New York,* No. 01-1106, 2005 WL

1889859, at *7 (E.D.N.Y. Aug. 8, 2005) (internal quotations omitted); *Prince v. Cablevision Systems Corp.*, No. 04-8151, 2005 WL 1060373, at *8 (S.D.N.Y. May 6, 2005) ("Even after *Swierkiewicz*, courts have dismissed hostile work environment claims at the pleadings stage where, as here, the alleged conduct was not severe or pervasive enough to warrant relief."); *see also Gratton v. JetBlue Airways*, No. 04-7561, 2005 WL 1251786, at *9 (S.D.N.Y. May 25, 2005) (finding that "[a]lthough the Second Circuit has repeatedly cautioned against setting the bar too high, the behavior that [plaintiff] alleges constituted harassment was not of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse") (internal quotations omitted) (citation omitted).

In this case, no relief for a hostile work environment claim "could be granted under any set of facts that could be proved consistent with [Plaintiff's] allegations." *Swierkiewicz,* 534 U.S. at 514 (internal quotation and citations omitted). Because Plaintiff fails to give fair notice of any facts or circumstances that could support a hostile work environment claim, Plaintiff's claims must be dismissed.

In addition, Plaintiff's Amended Complaint lacks sufficient detail to provide defendants with fair notice of her sex discrimination claim. *See Swierkiewicz,* 534 U.S. at 512. The Court notes that in order to succeed on a hostile work environment claim, Plaintiff must link the actions by Prison Defendants to her gender. "It is axiomatic that mistreatment at work, whether through subjection to a hostile work environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex or other protected characteristic." *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001). "Hostility or unfairness in the workplace that is not the result of discrimination

10

against a protected characteristic is simply not actionable." *Nakis v. Potter*, No. 01-10047, 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004). Here, Plaintiff has failed to show any connection between Prison Defendants' behavior towards her and her gender.

D.      *Plaintiff's Retaliation Claim*

To establish a prima facie case of retaliation under Title VII, an employee must show: (1) that she participated in a protected activity and that this participation was known to the defendant (2) the occurrence of an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). The Court notes that for the purposes of a motion to dismiss, Plaintiff is not required to sufficiently plead all aspects of a prima facie case of retaliation, but rather need only plead facts which provide the defendant with "fair notice of what plaintiff's claim is, and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.[3]

A protected activity is any "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.* 202 F.3d 560, 566 (2d Cir. 2000). Here, Plaintiff alleges that she engaged in a protected activity when she initially complained about sexual harassment while still employed by St. Barnabas, and then again when she complained to several individuals about the credentialing requirements. Prison Defendants argue that she could not have been participating in a protected activity when she complained about being asked to provide credentials because Plaintiff could not have had a good faith belief that Prison Defendants' requests for credentials were the result of discrimination or a violation of the law.

---

[3] The *Swierkiewicz* holding applies with equal force to any claim, including retaliation claims, that the *McDonnell-Douglas* framework covers. *Williams v. New York City Housing Authority,* 458 F.3d 67, 72 (2d Cir. 2006).

11

Prison Defendants also argue that Plaintiff's complaint about sexual harassment in October 2000 was made to her prior employer and cannot serve as a basis for a retaliation claim against them. The Court finds it unnecessary to determine whether Plaintiff participated in a protected activity because Plaintiff has not adequately pled any adverse employment action that would support a claim of retaliation.

The Supreme Court recently held that for retaliatory conduct to be "materially adverse" and, therefore, actionable, it must be something that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. White*, 548 U.S. - -, - -, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006). Generally, "materially adverse" acts affect an employee's pay or responsibilities, but they have also been found where an employee's chances for promotion were affected by the adverse act. *Garel v. City of New York*, No. 04-3506, 2006 WL 3024725, at *3 (E.D.N.Y. Oct. 23, 2006). Many of the occurrences Plaintiff alleges in her Amended Complaint, such as being reclassified as a "float" or being transferred to another facility, are barred from consideration by the statute of limitations. After February 20, 2004, Plaintiff's complaints primarily consist of being asked to produce additional credentials and an additional picture for her file.[4] Although *Burlington*

---

[4] On February 22, 2005, Plaintiff alleges that, upon returning from a month of medical disability leave, she was told to "go home and await her EEOC hearing." (Compl. ¶ 44.) However, Plaintiff alleges no facts in her Amended Complaint that indicate that she was actually sent home. In fact, she cites in her Amended Complaint another workplace conversation that took place later that same day. (Compl. ¶ 45.) She was not asked or required to miss any work, nor was she deprived of any salary or benefits. Even if these words could be considered a threat, most courts in this Circuit that have faced the issue have decided that an unrealized threat of discipline is not actionable under Title VII. *Bowles v. New York City Transit Authority,* No. 00-4213, 2006 WL 1418602, at *10 (S.D.N.Y. May 23, 2006); *see also Massie v. Ikon Office Solutions, Inc.*, 381 F. Supp. 2d 91, 99 (N.D.N.Y. 2005) (where plaintiff had received numerous warnings his "fear of being terminated [was] not an adverse employment action because of its lack of consequence"); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) (where a plaintiff was repeatedly warned but never disciplined, "such criticism, without any other negative results such as a decrease in pay or being placed on probation, simply [could] not support plaintiff's discrimination

(continued...)

*Northern* defines adverse employment actions broadly, the Court finds that Prison Defendants' requests for additional credentialing were not adverse employment actions. This is especially true where, as here, Plaintiff admits that the requested credentials were not in her file. *See* Compl. ¶ 28. Because Plaintiff has provided no set of facts in support of her claim which would entitle her to relief, her retaliation claim must be dismissed.

E.     *Plaintiff's State Law Claims*

The decision whether to exercise supplemental jurisdiction is left to the discretion of the district court. *Ametex Fabrics, Inc. v. Just In Materials, Inc*., 140 F.3d 101, 105 (2d Cir. 1998). Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state law claim where, as here, it dismisses all of the federal claims over which it has original jurisdiction. When all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice. *Tops Market, Inc. v. Quality Markets, Inc*., 142 F.3d 90, 103 (2d Cir. 1998).

Having concluded that Plaintiff's Title VII claims against PHMS and PHS must be dismissed, this Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining

---

[4](...continued)
claims"); *Stembridge v. City of New York*, 88 F. Supp. 2d 276, 283 (S.D.N.Y. 2000) (acknowledging that "an employment decision need not result in discharge to fall within the Title VII protection," but holding that, where a plaintiff failed to show that reprimand had "a cognizable or material impact on the terms or conditions of his employment," he had not established an adverse employment action). The Court, therefore, does not consider this an adverse employment action for the purpose of a retaliation analysis.

claims under the New York State Human Rights Law and the New York City Human Rights Law, and dismisses these claims without prejudice.

## CONCLUSION

For the reasons set forth above, Plaintiff's complaint is dismissed. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
March 30, 2007

/s/
SANDRA L. TOWNES
United States District Judge